## THE PROVIDENCE & WORCESTER RAILROAD COMPANY V. EARL WRIGHT, COLLECTOR OF TAXES OF THE TOWN OF SMITHFIELD.

The rails, sleepers and bridges, &c., of a Railroad Corporation, together with their easement in the lands, within the located limits of the road, are real estate, and as such liable to taxation in the towns where they are situated.

THIS case was heard upon the following agreed statement of facts, to wit: " It is agreed that the said Railroad Company own in fee certain real estate in said town of Smithfield, and own in fee an easement in certain real estate in said town, said estates so owned by said Company, being the location, sleepers, rails and bridges, &c., of the Providence and Worcester Railroad, lying within the limits of the location made under the charter; that said town, by its proper officer, has levied upon certain real estate of said Company, situate in said town, and advertised the same for sale for non-payment of taxes. It is further agreed, that if any portion of said road, location, bridges, &c., as aforesaid, are legally taxed, as aforesaid, by said town, the Court shall enter judgment in favor of said town for nominal damages and costs; but if said Court are of opinion that no part of said location, &c., as aforesaid, are legally taxed, then judgment is to be entered for plaintiffs for nominal damages and costs."

*Ames*, for the plaintiffs, contended.    The question is
    61

not whether this property shall wholly escape taxation, but whether it shall be taxed in this specific form. The property itself is real estate, but the shares in the corporation are personal property, and, if this tax is allowed, the property is twice taxed, once to the corporation, and again to the individual shareholders. It is true the shares may be held by residents of other States, and so the property might be wholly untaxed in this; but it should be remembered that the shareholders abroad are taxed, and it would be a narrow policy, such as no statesman and no Court would approve, to contend, because our public improvements first originate in foreign capital, or subsequently pass into foreign hands, which is a mere change of investment, that therefore they should be subject to a specific tax in this State. But the more conclusive argument in favor of the exemption, is, that a railroad is a public highway, necessary to enable the commerce of one State to compete with that of another. The corporation is created by the act of the State, and armed with the power of the State to take private property for public use, and the public character thus impressed upon its creation, continues in the use of its property. Every person, upon the tender of proper tolls, has the same right to a railroad for the transportation of himself and his merchandise, which he has to a highway. The difference is, that the charge of building a highway and keeping it in repair, comes in the first instance from the public in the shape of a tax; a railroad is built and kept in repair by private subscription, and its use is paid for by tolls, which go to the persons who have thus relieved the public from taxation. In one instance, the payment must be made to provide for the use, and in the other as a condition of the use; the difference is merely modal. It is

true, the builders expect a profit for the use of their capital, but the public assents to it, because the building upon such terms is for their advantage. The road cannot be abandoned, if it turn out to be unprofitable, but, once built, is irrevocably devoted to the public use ; an attempt to dispose of it for other purposes forfeits the charter. The counsel relied upon *The Inhabitants of Manchester* v. *The Western R. R. Co.* (4 Met. 564,) in support of these views, and contended, that the provision of the charter of that Company, giving the State power to purchase the road upon certain terms, after the lapse of twenty years, did not distinguish that case from the present, inasmuch as it conferred no interest in the property but a mere right of pre-emption, after the lapse of the twenty years guaranteed to the Company, and was in fact more favorable than the charter of the plaintiffs, which, being subject to the general law in relation to corporations, might at any time be altered or repealed, thus making the plaintiffs mere tenants at will. He claimed that the Massachusetts case was not decided upon the peculiarity of the charter, but upon the broad principle, that the property, in its purposes and destiny, was public property; and that to tax it would be merely to divert money from one public purpose for the benefit of another.

*Jenckes* and *Steere*, for the defendant, contended, that a corporation would not be exempt from taxation, as public, unless it were so exclusively devoted to public uses that there could be no resulting private interest, or unless it expressly appeared to be exempted by the general law or act of incorporation. (Ang. & Ames, §§ 14, 31, 32 and 36 ; II Kent, p. 257 ; Welford on Railways, p. 155.) *King* v. *Commissioners, &c,* (4 Term, 730.) *King* v.

*Hull Dock Co.* (5 Maule & Sel.) *Mohawk & Hudson Railroad Co.* v. *Chute,* (4 Paige Ch. R. 384.) *The People* v. *The Board of Supervisors,* (4 Hill. 20.) *Queen* v. *The London and South Western Railway Co.* (41 Eng. C. L. R. 671.) *Queen* v. *Three Railway Companies,* (3 Law & Eq. R. 329.) *Queen* v. *The Trustees of the Birkenhead Docks,* (14 Law & Eq. R. 128.) *Ten Eyck* v. *The Delaware & Raritan Canal Co.,* (3 Harrison, 200.) *Providence Bank* v. *Billings & Pitman,* (4 Peters, 559.) *Albany & Schenectady Railroad Co.* v. *Osborne,* (12 Barb. S. C. R. 223.) *Boston Water Power Co.* v. *The City of Boston,* (9 Met. 205; Dig. of 1844, p. 431, §§ 27 and 28.)

GREENE, C. J. delivered the opinion of the Court.

We have no doubt the easement of the plaintiffs and their rails, sleepers, bridges, &c., are real estate, and subject to taxation within the decision of this Court in the case of the *Providence Gas Co.* v. *Thurber et al.,* unless exempted by the 28th section of the "Act regulating the assessing and collecting of taxes," Dig. of 1844, page 425. This section declares; "No property whatsoever, of any description, not ceded or belonging to the United States or this State, except as aforesaid, shall, on any pretence whatever, be deemed to be exempted from taxes; any law or act, public or private, to the contrary notwithstanding."

The only question we have to decide is, whether the property of the corporation, which has been taxed by the town of Smithfield, has been ceded or belongs to the State. If it does not, the statute declares, it shall not be exempt from taxes on any pretence whatsoever, any law or act, public or private, to the contrary notwithstanding.

The plaintiffs are a private corporation, their stock is the private property of the stockholders, who, as such, own all the corporate property, including the property taxed.

It is true, the corporation carry on the business of common carriers of freight and passengers; but this they do for hire, and for the private account of the stockholders, just as a steam-boat corporation may carry on the same business. The public are provided with a conveyance, but they must pay for it, or they cannot have it; any more than they can claim to be entertained at a tavern without paying for it.

The corporation have power, under their charter, to appropriate the land of private individuals for the purposes of the railroad, upon making compensation to the owners; but the stockholders, not the State, pay for the easement, and it becomes their property. The grant of this power over private property is made, not because when appropriated it in any way belongs to the State, but because of the public benefit anticipated from the use of the railroad. And this use is in one sense public; that is, all who can pay can use it; but the same may be said of a steam boat company or any other common carriers; whereas a highway is open to all without charge; it is paid for and maintained at the public expense for the free and common use of all.

The General Assembly have power, under the sixth section of the charter, to reduce the tolls, if, at the end of four years from the completion of the road, the net profits should fall short of twelve per cent. But this power implies no property in the State. The public had an interest in the tolls, for they were to pay them, and therefore the legislature have provided a limit to the amount which

the Company might demand. This is one of the conditions on which the charter was granted, and one of the checks against too high a rate of tolls. But the State has no pecuniary interest in it. The sixth section declares the tolls shall be for the sole benefit of the corporation.

So the corporation are required to make an annual report of their acts and doings, under their charter, to the General Assembly, and their books are to be open to the inspection of a committee of that body, and the treasurer must render an account of receipts and expenditures, when required by the General Assembly.

These provisions do not in any way indicate that the State have any right of property in the estate and effects of the corporation ; but are intended to secure to the General Assembly such supervision over the conduct of the corporation, as would guard against any violation of their charter. They retain a much larger control over banking corporations.

It is said, the corporation cannot divert the railroad from its purposes, by sale or otherwise : that is, they cannot sell their corporate rights or their road. They are bound by their charter to hold and maintain a railroad; but this gives the State no property in it or control over it, except to see that the charter is complied with.

The stockholders may dissolve the corporation when they please.

It is said, by the present assessment, corporate property is taxed twice ; first, the stock is taxed to each stockholder, as his private property, and, second, the corporate property is taxed to the corporation. This objection should be addressed to the General Assembly, not to this Court. That body has the entire control over the sub-

ject of taxation, to say what shall be taxed, and how much and what shall be exempt.

The charter of the New York, Boston & Providence Railroad Corporation is substantially like the plaintiffs'. By the 18th section of their charter, it is provided, that the property and capital stock of the corporation shall be exempted from every species of taxation for twelve years from the time their railroad should be opened for use. This shows how the legislature understood the exemption on which the plaintiff's counsel relies.

After the expiration of the twelve years, it is believed the towns, through which the road of that corporation runs, assessed the property of the corporation, as has been done in the present case, and the assessments have been paid without objection.

The 27th section of the "Act regulating the assessing and collecting of taxes," which enumerates the property intended to be exempt from taxation, includes in this enumeration, "such other property as now is or may hereafter be specially exempted by a charter granted by this General Assembly."

And the 28th section, in declaring that no property shall be exempt unless it belongs to the State, excepts such as is excepted in the 27th section, and, of course, property of a corporation specially exempted by a charter granted by the General Assembly. This shows the General Assembly understood that corporate property would be included in the 28th section, had such section contained no reference to the 27th section.

The counsel for the defendant have referred to the English practice of taxing the real estate of railway companies. Where the assessments are for poor rates, the only question has been upon the principle on which the

assessments in the different parishes should be made; but that the property was subject to assessment was never questioned. *Regina* v. *Three Railway Companies*, (3 Law & Eq. R. 329.) *Regina* v. *The Trustees of the Birkenhead Docks*, (14 Law & Eq. R. 128.)

In New York, the practice is to assess the easement, rails, bridges, &c., of the railroad corporations, and no objection has been made to it. *Mohawk & Hudson Railroad Co.* v. *Clute & others*, (4 Paige Ch. R. 384.) *Wheeler* v. *Rochester & Syracuse Railroad Co.* (12 Barb. 227.)

In Massachusetts, under a recent decision of the Supreme Court of that State, a different practice prevails. *Inhabitants of Manchester* v. *Western Railroad Corporation*, (4 Met. 564.)

Taxation is a subject, on which each State has, and is entitled to have, their own views of justice and policy, and, where these views are carried out by legislation, the Court are bound to give to this legislation its proper effect.

The case in Massachusetts was decided upon the ground of a constructive exemption. Our statute is more stringent than that of Massachusetts, and was obviously intended to exclude constructive exemptions. To prevent claims like the present being set up, they declare that no property whatever, of any description, shall be exempt from taxation upon any pretence whatever, unless it belongs to the State, any law or act, public or private, to the contrary notwithstanding.

We decide this cause, not upon the English practice, or the practice of other States, but upon the plain and unequivocal language of our statute.

*Judgment for defendant.*